**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

**KELLY J. DILLOW-LOPEZ,**            :
                                                              **Civil No. 3:16-1442**
                            **Plaintiff,**       :
     **v.**                                                    **(Judge Mannion)**
                                                       :
**NANCY A. BERRYHILL,**
**Acting Commissioner of**               :
**Social Security**[1]
                      **Defendant.**      :

## MEMORANDUM

The above-captioned action is one seeking review of a decision of the Acting Commissioner of Social Security ("Commissioner"), denying Plaintiff Kelly J. Dillow-Lopez's ("Dillow-Lopez") application for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and Title XVI. For the reasons set forth below, we will vacate the decision of the Commissioner and remand the case for further proceedings.

## I. BACKGROUND

Disability insurance benefits are paid to an individual if that individual is

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin, Acting Commissioner of Social Security as the defendant in this suit

disabled and "insured"; that is, the individual has worked long enough and paid social security taxes. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." It is undisputed that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2013. (Tr. 18).[2]

Plaintiff was born on December 3, 1963 (Tr. 29, 46). Plaintiff has her GED (Tr. 47), and has past work experience as a cashier and sales associate. (Tr. 28, 162). Plaintiff has testified that she stopped working in February 2010 after a slip and fall in her then employer's parking lot, resulting in lumbar spine pain and nerve damage to her left leg. (Tr. 47).[3] She suffers from the following severe impairments: disc herniation at L4-5; obesity; anxiety disorder; panic disorder; generalized anxiety disorder; major depressive disorder; and non-ST elevation myocardial infraction (cardiovascular disease). (Tr. 19; Doc. 15, Ptf.'s Br., at 2).

Plaintiff protectively filed for DIB on June 3, 2013, and SSI on June 11, 2013, alleging disability beginning February 10, 2010. (Tr. 16). These claims were initially denied on September 4, 2013. (Id.). Plaintiff requested a hearing before the Administrative Law Judge ("ALJ") Office of Disability and

---

[2] References to "Tr. ___" are to pages of the administrative record filed by the Defendant as part of the Answer (Docs. 11 and 12) on September 21, 2016.

[3] Plaintiff received a worker's compensation settlement in 2012. (Tr. 47).

Adjudication and Review of the Social Security Administration, and one was held on January 12, 2015. (Id.). At the hearing, Plaintiff was represented by counsel and a vocational expert testified. (Id.).

On February 6, 2015, the ALJ issued a decision denying Plaintiff's applications. (Tr. 16-30). On March 25, 2015, Plaintiff filed a request for review with the Appeals Council. (Tr. 12). The Appeals Council denied Plaintiff's request for review on May 12, 2016. (Tr. 1-7). Thus, the ALJ's decision stood as the final decision of the Commissioner.

Thereafter, Plaintiff filed a complaint in this Court on July 12, 2016. (Doc. 1). The Commissioner filed an answer on September 21, 2016. (Doc. 11). After supporting and opposing briefs were submitted (Docs. 15, 18, 19), the appeal became ripe for disposition.

## II. STANDARD OF REVIEW

When considering a social security appeal, the Court has plenary review of all legal issues decided by the Commissioner. See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 91 (3d Cir. 2007); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008). However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. §405(g) is to determine whether those findings are supported by "substantial evidence." Id. The factual findings of the Commissioner, "if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. §405(g). "Substantial evidence does not mean a large or

considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson, 529 F.3d at 200 (3d Cir. 2008) (quoting Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)) (internal quotations and citations omitted). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (citing Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)). The Court of Appeals for the Third Circuit has stated,

> [O]ur decisions make clear that determination of the existence *vel non* of substantial evidence is not merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.

Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (citing Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983); Gilliland v. Heckler, 786 F.2d 178, 183 (3d Cir. 1986)). Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Id. (citing Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981)).

## III. SEQUENTIAL EVALUATION PROCESS

The plaintiff must establish that there is some "medically determinable basis for an impairment that prevents him from engaging in any substantial gainful activity for a statutory twelve-month period." Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001) (quoting Plummer, 186 F.3d at 427) (internal quotations omitted). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" Fargnoli, 247 F.3d at 39 (quoting 42 U.S.C. §423(d)(2)(A)). The Commissioner follows a five-step inquiry pursuant to 20 C.F.R. §404.1520 to determine whether the claimant is disabled. In Plummer, the Third Circuit set out the five-steps:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § [404.]1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987) . . . . In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. §404.1520(c). If the claimant fails to show that her impairments are "severe," she is ineligible for disability benefits.
> In step three, the Commissioner compares the medical evidence

of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. §404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. §404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994).

If the claimant is unable to resume her former occupation, the evaluation moves to the final step. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. §404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled. See 20 C.F.R. §404.1523. The ALJ will often seek the assistance of a vocational expert at this fifth step. See, [sic] Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984).

Plummer, 186 F.3d at 428.

## IV. DISCUSSION

The ALJ went through each step of the sequential evaluation process.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 10, 2010, the alleged onset date. (Tr. 18). At step two, the ALJ found that Plaintiff had the following severe impairments: disc herniation at L4-5; obesity; anxiety disorder; panic disorder; generalized anxiety disorder; major depressive disorder; and non-ST elevation myocardial infraction (cardiovascular disease). (Tr. 19). At step three, the ALJ found that Plaintiff's impairments did not meet or equal a listed impairment. (Id.). The ALJ found at step four that Plaintiff had the residual functional capacity ("RFC") to perform:

> a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). She can occasionally stoop, crouch, crawl, kneel, and climb, but no ladders, ropes, or scaffolds. She can frequently balance. She should avoid concentrated exposure to vibrations and hazards, including moving machinery and unprotected heights. She can do simple, routine tasks, but as of April 2011, no complex tasks, in a low stress work environment, defined as occasional decision-making and occasional changes in the work setting. She can have occasional interaction with the public, co-workers, and supervisors.

(Tr. 21).

At step five, the ALJ found that there are jobs that exist in significant

numbers in the national economy that Plaintiff can perform. (Tr. 29).

Plaintiff appeals the ALJ's determination on two grounds: (1) the ALJ erred in assessing the medical opinion evidence; and (2) the ALJ erred in assessing Plaintiff's RFC. The Court notes that Plaintiff does not raise any argument as to her alleged mental impairments, only her alleged physical impairments. Accordingly, only those issues raised by Plaintiff will be addressed.

**Medical Opinion Evidence**

We first address Plaintiff's contention that the ALJ erred in assessing the medical opinion evidence. Specifically, Plaintiff argues that the ALJ did not properly assess the medical opinion evidence of her three treating physicians, assigning less than great weight to each.

The regulations set forth at 20 C.F.R. §404.1527(a)(2) and §416.927(a)(2), define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions." Regardless of its source, the ALJ is required to evaluate every medical opinion received. 20 C.F.R §404.1527(c) and §416.927(c).

We begin our analysis with the basic tenet - where the ALJ finds that no

treating source opinion is entitled to controlling weight, as in the instant case, the regulations provide that the weight of all non-controlling opinions by treating, non-treating, and non-examining medical sources should be evaluated based on certain factors. Those factors include the examining relationship, the length of the treatment relationship and frequency of visits, nature and extent of the treatment relationship, whether the medical source supports the opinion with medical evidence, whether the opinion is consistent with the record as a whole, and the medical source's specialization. 20 C.F.R. §404.1527(c)(1-5). In addition, the ALJ should consider any other factors that tend to support or contradict the opinion that were brought to her attention, including "the extent to which an acceptable medical source is familiar with the other information in [the] case record." 20 C.F.R. § 404.1527(c)(6). See Markoch v. Colvin, Civ. No. 14-cv-00780, 2015 WL 2374260, at *6 (M.D. Pa. May 18, 2015).

Additionally, the ALJ must consider all of the relevant evidence and give a clear explanation to support his or her findings. Fargnoli v. Massanari, 247 F.3d 34, 40-41 (3d Cir. 2001) (quoting Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000)). If the ALJ discounts certain evidence, [s]he must give some indication of the reasons for discounting that evidence. Fargnoli, 247 F.3d at 43. While the ALJ may choose whom to credit in her analysis, she "cannot reject evidence for no reason or for the wrong reason." Morales v. Apfel, 225 F.3d 310, 316-18 (3d Cir. 2000). The ALJ has the duty

to adequately explain the evidence that she rejects or to which she affords lesser weight. Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 505-06 (3d Cir. 2009) (holding that because the ALJ did not provide an adequate explanation for the weight he gave to several medical opinions, remand was warranted). "The ALJ's explanation must be sufficient enough to permit the court to conduct a meaningful review." Morales v. Colvin, Civ. No. 14-cv-2330, 2016 WL 907743, at *8–9 (M.D. Pa. Mar. 2, 2016) (quoting In re Moore v. Comm'r of Soc. Sec., Civ. No. 11-3611, 2012 WL 2958243, at *2 (D.N.J. July 19, 2012) (citing Burnette v. Comm'r of Soc. Sec., 202 F.3d 112, 119-20 (3d Cir. 2000)).

The record in this case reveals numerous medical opinions offered by treating, non-treating, and non-examining physicians. Of all the medical opinions offered, the ALJ afforded the most weight, or "great" weight, to Dr. Amir Fayyazi, an orthopedic surgeon that examined Plaintiff in connection with her worker's compensation claim, and Dr. Sharon Wander, a consulting physician for the State Agency who reviewed Plaintiff's medical records. (Tr. 26, 27). The remaining medical opinions authored by Plaintiff's treating physicians, Dr. Emmanuel Jacob, Dr. Albert Janerich, and Dr. Robert Dompkosky, were all afforded "little" weight by the ALJ. (Tr. 26-28).

Dr. Jacob has been treating Plaintiff since February 23, 2010 for low back pain and pain in the left hip down to her left lower limb. (Tr. 485-487). On initial examination, Dr. Jacob observed an antalgic gait as well as tenderness

along the L4, L5-S1 segment and the left sacroiliac joint, and positive straight leg elevation on the left side. (Tr. 486). Dr. Jacob assessed Plaintiff with a compression fracture of the lumbar spine, probable lumbar disc injury, and bruising of the left hip and lumbosacral and coccygeal bones. (Id.). Dr. Jacob further opined that Plaintiff was temporarily totally disabled and not able to return to work. (Tr. 487).

In the course of treating Plaintiff, Dr. Jacob obtained an x-ray of her left hip that showed no fracture (Tr. 484), a March 4, 2010 MRI of her lumbar spine that showed a mild central disc herniation at the L5-S1 segment, with mild central canal stenosis and degenerative flattening of the disc with reactive marrow changes around the endplates, and an electromyography (EMG)[4] that showed lumbar radiculopathy, left L5 roots and no electrodiagnostic findings of diffuse neuropathy or myopathy. (Tr. 301, 480, 483). A second MRI of Plaintiff's lumbar spine, performed on April 27, 2011, continued to show a L4-5 disc herniations with neuroforaminal stenosis, and a straightening of the lumbar lordotic curve which is indicative of muscle spasm. (Tr. 302-03, 406). Throughout his treatment of Plaintiff, Dr. Jacob noted her continued complaints of low back and limb pain, and muscle spasm. (Tr. 372-488). Dr. Jacob helped treat Plaintiff's symptoms with some relief with bio-freeze and acupuncture. (Id.). During a July 21, 2010 deposition in connection with Plaintiff's worker's compensation case, Dr. Jacob testified

---

[4] An EMG is used to assess nerve damage.

that Plaintiff could not work in any capacity, but if she improved and progressed, she could work with some type of restrictions in six months. (Tr. 259-94).

In connection with Plaintiff's worker's compensation case, Dr. Amir H. Fayazzi, a non-treating, examining physician, examined Plaintiff on two occasions: July 22, 2010 and April 25, 2011. (Tr. 780-86). On examination, Dr. Fayyazi noted that Plaintiff had discomfort and decreased range of motion in her lumbar spine, that she had a normal gait, and could heel and toe walk and stand on one leg. (Tr. 782). Dr. Fayyazi concluded that Plaintiff suffered from disc herniation and degenerative disc disease at L4-L5. (Tr. 784). Dr. Fayyazi further noted that Plaintiff has stopped undergoing physical therapy after six months due to it aggravating her symptoms. (Tr. 780). He opined in both a letter and at a deposition, where he testified on behalf of Plaintiff's former employer, that she has reached "maximum medical improvement" from her condition. (Tr. 153, 784). He further stated that her symptomatology appears to be non-physiological, and her complaints not valid. (Id.).[5] Dr. Fayyazi concluded that he would recommend no further treatment, including the acupuncture treatment, and that Plaintiff could return to work on light duty

---

[5] The Worker's Compensation Judge noted the questionable validity of Dr. Fayyazi's opinions since he disregarded Plaintiff's symptoms and dismissed them as symptom exaggeration. Specifically, Dr. Fayyazi opined that Plaintiff was not suffering from any symptoms from her L4-5 disc herniation. (Tr. 153).

restrictions. (Id.). Such restrictions include alternating sitting and standing and walking and driving for 5 to 8 hours in an 8 hour workday. (Tr. 153, 255-57).

Dr. Sharon A. Wander, a non-examining medical source, reviewed the record evidence on July 22, 2013, and completed a Physical Residual Functional Capacity Assessment. (Tr. 79-81). She opined that Plaintiff was capable of standing/walking for 6 hours in an 8 hour day, and could sit for 6 hours in an 8 hour day. (Id.). She further concluded that Plaintiff could occasionally lift and/or carry 20 pounds and could frequently lift/carry up to 10 pounds. (Tr. 79).

Plaintiff also treated with treating physician, Dr. Albert Janerich and his physician assistant, Elaine Lacey, from April 2013 through December 2015, for pain management. (Tr. 658-70). On initial examination on April 24, 2013, Plaintiff was observed as having a restricted range of motion of her lumbar spine; mild left sacroiliac joint tenderness; able to go from sit to stand and stand to sit independently; paralumbar spasm; unable to walk on heels and toes because of pain; and had a positive straight leg raise bilaterally. (Tr. 660). Dr. Janerich's longitudinal treatment records reflect Plaintiff's ongoing "chronic low back pain," the cause of which relates to degenerative joint and degenerative disc disease with radiculopathy. (Tr. 658-70). Dr. Janerich's notes also show that Plaintiff remains obese, with spasm, and a restricted range of motion. (Id.). In addition to her pain medications, Dr. Janerich also placed her on a TENS unit. (Tr. 662). From May to July, 2014, Plaintiff

complained of increased lower back and leg pain. (Tr. 664-66). At her July 2014 examination, she was diagnosed with lumbosacral strain/sprain, discogenic disease, and muscle spasm. (Tr. 665). Dr. Janerich's notes further indicate that her lower back pain relates to discogenic disease with a documented radiculopathy as evidenced on her EMG. (Tr. 664). Dr. Janerich also provided a Physical Capacities Evaluation on January 6, 2015, opining that Plaintiff could occasionally lift/carry up to 10 pounds, and could sit for 3 hours, stand for 1 hour, and walk for 1 hour total in an 8 hour workday. (Tr. 694).

Finally, there are records from Plaintiff's treating physician, Dr. Robert Dompkosky, from August 2013 through December 2014. (Tr. 697-779). The majority of Dr. Dompkosky's treatment notes address Plaintiff's obesity, and chest, migraine, and anxiety complaints. (Id.). Dr. Dompkosky's notes also reflect that Plaintiff reported cervical pain and mild diffuse left wrist, and neck pain. (Tr. 712, 722, 727, 732, 737, 742, 747-48, 752, 757-58, 767, 773-74, 777-78). Dr. Dompkosky completed a Physical Capacities Evaluation form on December 17, 2014, opining that Plaintiff could sit for 1 hour in an 8 hour workday, stand for 2 hours, and walk for 1 hour. (Tr. 688). He also provided that Plaintiff could occasionally lift and carry up to 10 pounds, and frequently lift and carry up to 5 pounds. (Id.).

In her decision, the ALJ explained that she accorded "little" weight to the medical opinions of Plaintiff's three treating physicians for the following

14

reasons. With regard to Dr. Jacob, the ALJ provided that: his opinion that Plaintiff was temporarily totally disabled was without support from the objective findings of record, including Dr. Jacob's own findings; there is a lack of disability statements and specificity in his treatment records; and his opinion as to her status of "disabled" is one reserved to the Commissioner. (Tr. 27). With regard to Dr. Janerich, the ALJ stated: there is nothing in the record to support such great limitations of less than sedentary exertion, including Dr. Janerich's own objective findings.(Tr. 28). Finally, with regard to Plaintiff's primary care physician, Dr. Dompkosky, the ALJ noted that there is nothing in the record to support such great limitations, including Dr. Dompkosky's own objective findings. (Id.).

Instead, the ALJ chose to accord "great" weight to Dr. Fayyazi's opinion, rendered in a deposition for Plaintiff's worker's compensation case on March 14, 2012. (Tr. 27). Specifically, the ALJ accorded great weight to Dr. Fayyazi's opinion that Plaintiff is capable of a range of light work with no climbing of ladders, occasional climbing of stairs, and occasional kneeling. (Id.). The ALJ reasoned that the limitations on ladders, stairs and kneeling is supported by the objective examinations from Plaintiff's treating providers. (Id.). However, the ALJ gave limited weight to Dr. Fayyazi's opinion that she is limited occasionally to bending at the waist, squatting at the knees, reaching above the shoulder, and using feet for foot controls, since the ALJ found that these limitations are entirely without support from the evidence. (Id.).

15

Finally, the ALJ accorded "great" weight to the non-examining State Agency physician, Dr. Wander's opinion. Dr. Wander opined that Plaintiff is limited to a range of light work with occasional climbing of ladders/ropes/scaffolds, occasional stooping, and frequent kneeling, crouching, and crawling. (Tr. 26). Dr. Wander further noted that Plaintiff would need to avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. (Id.). However, while she gave "great" weight to this opinion, the ALJ found that the evidence supports a finding that Plaintiff could never climb ladders/ropes/scaffolds and that she could only occasionally kneel, crouch, and crawl. (Id.). The ALJ further provided that she found no evidence to support Dr. Wander's opinion that Plaintiff would need to avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. (Id.). Despite this, the ALJ still afforded "great" weight to the "overall" opinion of Dr. Wander. (Id.).

Based upon the evidence above, the ALJ's decision to accord "limited" weight to the three treating physicians and "great" weight to the non-treating and non-examining physician is without evidentiary support, and is thus not supported by substantial evidence. While Defendant asserts that the ALJ properly assigned weight to the medical opinions, citing the deferential nature of substantial evidence review, "[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight." Morales, 225 F.3d at 317. In order to resolve an evidentiary

conflict against a treating source medical opinion, the ALJ must provide "good" reasons. See 20 C.F.R. § 404.1527(c)(2). "Good reasons" must be higher than substantial evidence, otherwise, the "good reasons" language would be superfluous. See Bilski v. Kappas, 561 U.S. 593, 607-08 (2010) (internal citations omitted) (Court may not interpret "any statutory provision in a manner that would render another provision superfluous."). While the ALJ may choose whom to credit in her analysis, she "cannot reject evidence for no reason or for the wrong reason." Morales, 225 F.3d at 316-18.

Here, the ALJ noted that Plaintiff's RFC "is supported by and consistent with the objective medical evidence, including diagnostic testing and measurable findings in clinical examination." (Tr. 28). However, the ALJ does not discuss the significant evidence that supports the opinions of the treating physicians regarding Plaintiff's course of treatment, the consistency of her claims, or how the diagnostic testing fails to support her claim. The treating source records show Plaintiff's ongoing "chronic low back pain," the cause of which relates to degenerative joint and degenerative disc disease with radiculopathy, throughout their longitudinal treatment records. (Tr. 372-488, 658-70). Also observed by the treating physicians is Plaintiff's positive straight leg raises, muscle spasms, and inability to walk on heels and toes because of pain. (Tr. 486, 660). These records are supported by diagnostic tests, relied upon by her treating physicians in the form of x-rays, MRI's, and an EMG. Plaintiff's complaints of increased lower back and leg pain were also

documented by her treating physicians from May to July, 2014. (Tr. 664-66, 740-49).

In contrast, Dr. Fayyazi opined that Plaintiff was not suffering from any symptoms from her L4-5 disc herniation, that there is no evidence of muscle spasm, that she is able to walk on her toes and heels, and that there is no evidence of radiculopathy. (Tr. 782, 784). Despite this sharp contrasted opinion from that of Plaintiff's treating physicians, the ALJ accorded Dr. Fayyazi's opinion "great" weight that Plaintiff is able to perform a range of light work. The ALJ has not addressed and explained the significant evidence that actually supports the treating physician's opinions. Accordingly, the ALJ's cursory analysis of the evidence precludes the Court from concluding that she properly found that the evidence did not support the treating physician's opinions. See Ray v. Colvin, Civ. No. 13-CV-0073, 2014 WL 1371585, at *21 (M.D. Pa. Apr. 8, 2014) ("The cursory manner in which the ALJ rejected Dr. Jacob's opinions runs afoul of the regulation's requirement to "give good reasons" for not crediting the opinion of a treating source upon consideration of the factors listed above. While there may be sufficient evidence in the record to support the ALJ's ultimate decision that Plaintiff was not under a disability, and, thus, the same outcome may result from remand, the court cannot excuse the denial of a mandatory procedural protection on that basis"); Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994) ("the Secretary must "explicitly" weigh all relevant, probative and available evidence. The Secretary

must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition. The Secretary may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reasons for discounting the evidence she rejects") (citing Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979)).[6]

Similarly, the ALJ afforded "great" weight to Dr. Wander's July 22, 2013 opinion that Plaintiff is capable of light work. However, the non-treating, non-examining source reviewed an incomplete case record. Specifically, Dr. Wander's review of the medical records as of July 22, 2013 did not include any of Dr. Janerich's notes from May to July, 2014, wherein Plaintiff complained of increased lower back and leg pain (Tr. 664-66), or her July 2014 examination, wherein she was diagnosed with lumbosacral strain/sprain, discogenic disease, and muscle spasm. (Tr. 665). See Brown v. Astrue, 649 F.3d 193 (3d Cir. 2011); Brownawell v. Comm'r of Soc. Sec., 554 F.3d 352

---

[6] The Court also notes that Dr. Fayyazi testified on behalf of the defendant in Plaintiff's worker's compensation claim (Tr. 27, 153), and that "social security claims and worker's compensation claims operate under "different standards for determining disability" and therefore, an opinion rendered in one proceeding is of "limited significance" in the other") Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999); see also 20 C.F.R. §404.1504 ("A decision by any nongovernmental agency or any other governmental agency about whether you are disabled ... is based on its rules and is not our decision about whether you are disabled ... [w]e must make a disability ... determination based on social security law. Therefore, a determination made by another agency ... is not binding....")

(3d Cir. 2008), 554 F.3d 352 (holding that three non-treating opinions were not sufficient to reject a treating source medical opinion because they were "perfunctory" and omitted significant objective findings promulgated after the non-treating opinions were issued); Kreiser v. Colvin, Civ. No. 15-CV-1603, 2016 WL 704957, at *13 (M.D. Pa. Feb. 23, 2016 (noting that expert "reviewed records ... through November 2012" and "the record does not appear to contain ... treatment records which post date [the expert's] opinion.").

Moreover, it appears that the ALJ engaged in a lay evaluation of the medical evidence by confusingly affording Dr. Wander's opinion "great" weight, yet ostensibly disagreeing with the same opinion she afforded great weight to. See Burns v. Colvin, 156 F. Supp. 3d 579, 595 (M.D. Pa. Jan. 13, 2016) (An "ALJ may not reject a supported medical opinion based on the ALJ's lay evaluation of medical evidence."). For example, the ALJ provides that great weight is given to Dr. Wander's Physical Residual Functional Capacity assessment opining that Plaintiff is limited to a range of light work with occasional climbing of ladders/ropes/scaffolds, occasional stooping, and frequent kneeling, crouching, and crawling, and also that Plaintiff would need to avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. The ALJ then provides that she "generally agrees with this consultant's opinion"; however, then proceeds to state that she finds that Plaintiff could "never climb ladders/ropes/scaffolds and that she could only

occasionally kneel, crouch, and crawl." (Tr. 26). Even more, the ALJ concludes that she finds no evidence to support Dr. Wander's opinion that Plaintiff would need to avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. Consequently, the ALJ's decision cannot be said to be supported by substantial evidence.

## V. CONCLUSION

Given the foregoing, substantial evidence does not support the ALJ's medical opinion evidence assessment. Pursuant to 42 U.S.C. §405(g), the court will vacate the Commissioner of Social Security's decision and remand this case for further proceedings. We will decline to address Plaintiff's other allegation of error, as remand may produce a different result on this claim, making discussion of it moot. Burns v. Colvin, 156 F. Supp. 3d 579, 598 (M.D. Pa. Jan. 13, 2016); see LaSalle v. Comm'r of Soc. Sec., Civ. No. 10-1096, 2011 WL 1456166, at *7 (W.D. Pa. Apr. 14, 2011). An appropriate order follows.

s/ _Malachy E. Mannion_
**MALACHY E. MANNION**
**United States District Judge**

**DATED: March 21, 2017**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2016 MEMORANDA\16-1442-01.wpd